MILTON D. TAYLOR CONSTRUCTION CO., Appellant,

v.

OHIO DEPARTMENT OF TRANSPORTATION, Appellee.

[Cite as *Milton D. Taylor Constr. Co. v. Ohio Dept. of Transp.* (1988), 61 Ohio App.3d 222.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–348.

Decided Dec. 20, 1988.

*Millisor & Nobil* and *Roger L. Sabo,* for appellant.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *William J. McDonald,* for appellee.

PEGGY L. BRYANT, Judge.

Plaintiff-appellant, Milton D. Taylor Construction Co., appeals from a judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Transportation, on plaintiff's claim for breach of contract.

Pursuant to bid, plaintiff was awarded a contract with defendant to construct a culvert under a roadway in Mahoning County to accommodate a stream draining from a nearby reservoir. Under that contract, plaintiff was to construct a pipe arch with concrete headwalls at both the inlet and outlet of the culvert. While plaintiff's contract with defendant provided design and general construction details of the contract, it did not specify the forms that plaintiff was to use in preparing for and forming the headwalls.

Employing a method apparently utilized by others in the industry, plaintiff used a wooden form into which concrete was poured to shape the concrete headwalls. The form included stringers, which blocked a portion of the opening of the pipe and culvert. On June 15, 1982, the forms were assembled and the concrete was poured. On the evening of June 15, rain began to fall and continued into the next day. Over a period of approximately twenty-eight

hours, 1.84 inches of rain fell. When the company returned to the project on June 17, it found that the headwall and forms, together with a portion of the pipe arch, had lifted out of place into the air and were damaged.

Pursuant to Section 107.15 of the Construction and Material Specifications, plaintiff repaired the damage to the project at a cost of $30,470.04 and sought reimbursement from defendant. Defendant refused payment, contending that the damage to the project was caused through the fault or negligence of the contractor under Section 107.16 of the Construction and Material Specifications. Plaintiff then initiated a lawsuit in the Ohio Court of Claims, contending that defendant breached its contract with plaintiff by its failure to reimburse plaintiff for the cost of repairing the damage to the construction. A hearing was held before a referee, who, following several days of testimony, prepared a report, including findings of fact and conclusions of law. Therein, the referee recommended that judgment be entered for defendant. The trial court accepted the referee's report and recommendation and entered judgment accordingly. Plaintiff appeals, setting forth five assignments of error:

"1. The Court of Claims, by its referee, erred as a matter of law in failing to consider that 'unforeseeable causes' and not merely 'acts of God' entitle a contractor to additional compensation for work performed and subsequently damaged during construction.

"2. The Court of Claims erred as a matter of law, in failing to find that the collapse of a pipe arch on a construction project was an unforeseeable condition, without the fault of appellant, and entitling appellant to costs of repair and replacement.

"3. The Court of Claims, by its referee, erred as a matter of law in requiring a construction contractor to establish defective design by the owner before it could recover under a contract clause allowing payment to the contractor for damage occasioned to work by unforeseeable causes.

"4. The Court of Claims, by its referee, erred as a matter of law in failing to award damages on a construction project, which [damages] were not disputed, representing * * * [the contractor's] costs to rebuild a portion of the project.

"5. The Court of Claims erred, as a matter of law, in failing to other than simply confirm the report of a referee without any consideration given to objections filed by appellant."

Plaintiff combines the first three assignments of error into its first proposition of law, which it sets forth as the following:

"A contractor who submits a claim for additional compensation for work damaged after completion upon an Ohio Department of Transportation construction project is entitled, pursuant to ODOT construction and material specifications, to consideration of the claim on the basis of whether it is due to unforeseeable causes which go beyond the definition of an act of God as may be defined in prior legal precedent."

In its first proposition of law, then, plaintiff contends that the referee erred in failing to consider whether the circumstances presented by the construction project at issue constituted an unforeseeable condition outside the control of plaintiff. Plaintiff suggests that had the referee so considered the facts presented at the hearing, he would have concluded that the pipe's rising into the air, and the damage caused thereby, resulted from an unforeseeable cause outside the control of the contractor, and therefore compensable under Section 107.16.

Section 107.16 of the defendant's Construction and Material Specifications states the following:

"Contractor's Responsibility for Work. Until final written acceptance of the project by the Director, the Contractor shall have the charge and care thereof and shall take every precaution against injury or damage to any part thereof by the action of the elements or from any other cause, whether arising from the execution or from the nonexecution of the work. The Contractor shall rebuild, repair, restore, and make good all injuries or damages to any portion of the work occasioned by any of the above causes before final acceptance and shall bear the expense thereof *except damage to the work due to unforeseeable causes beyond the control of and without the fault or negligence of the Contractor, including but not restricted to acts of God, of the public enemy or governmental authorities.*" (Emphasis added.)

We note, preliminarily, pursuant to the foregoing language, two exceptions exist to the contractor's responsibilities under this section: a general category of damage due to unforeseeable causes beyond the control of and without the fault or negligence of the contractor; and, a second category, included within the first, and specified as damage caused by acts of God, of the public enemy or governmental authorities.

In the case before us, plaintiff suggests that, while the referee considered whether the facts and circumstances of this case fell within the definition of an act of God as set forth in *Piqua v. Morris* (1918), 98 Ohio St. 42, 120 N.E. 300, the referee incorrectly failed to consider whether the facts and circumstances constituted unforeseeable causes beyond the control of the contractor.

■ Initially, we agree with the referee that the rainfall herein does not constitute an act of God. More specifically, approximately 1.84 inches of rain fell over a period of twenty-eight hours. Testimony at the hearing established that that constituted a rainfall of a one-year frequency; in other words, one could expect a rainfall of that severity every year. *Piqua v. Morris, supra,* defines an "act of God" as follows:

"The term 'act of God' in its legal significance, means any irresistible disaster, the result of natural causes, such as earthquakes, violent storms, lightning and unprecedented floods. It is such a disaster arising from such causes, and which could not have been reasonably anticipated, guarded against or resisted.  * * * " *Id.* at 47–48, 120 N.E. 300 at 301.

In short, application of the foregoing definition to the facts and circumstances of this case results in our concluding that the rainfall herein did not constitute an act of God.

■ The second question, then, is whether the rainfall constituted an unforeseeable cause beyond the control of the plaintiff. Plaintiff contends that the referee failed in any way to consider that aspect of this case. The referee's report discloses to the contrary. More specifically, on pages five and six of the referee's report, the referee concludes that:

" * * * The Referee is persuaded that the rainfall could reasonably have been expected by the Plaintiff and that it was not, in the language of Section 107.16 of the contract between the parties, [an] * * * unforeseeable cause beyond the control of * * * the contractor.  * * * "

Further, the referee noted that "[t]he rainfall was an 'action of the elements' against which the contract charged [plaintiff] with taking, * * * every precaution against * * * damage * * *." At a later point on page six of his report, the referee continued by stating that " * * * the damage was a result of some interaction between the work on the project and the natural forces of and caused by the rainfall.  * * * " Given the foregoing, we can conclude only that the referee did, in fact, consider whether the rainfall was an unforeseeable cause beyond the control of the contractor. The referee concluded that the rainfall was not. The remaining issue, then, is whether the record supports the referee's conclusion.

Pursuant to plaintiff's contract with defendant, plaintiff was to construct the pipe arch to handle a fifty-year frequency rainfall. In other words, the pipe was to be constructed in such a fashion as to accommodate a rainfall of such magnitude that it occurs only once every fifty years. The evidence herein indicated that the rainfall which occurred on June 15–16, 1982, was a one-year frequency rainfall, or, a rainfall likely to occur once each year. We

cannot conceive of any interpretation of the facts which would suggest that a one-year frequency rainfall is an unforeseeable event. Indeed, the referee would have abused his discretion in concluding to the contrary. Accordingly, we agree with the referee that the rainfall herein was an event properly foreseeable by the plaintiff. Moreover, the record contains substantial evidence that but for the use of the plywood forms with stringers to shape the headwalls at the ends of the culvert, the damage to the construction project would not have occurred. Given that evidence, the record contains a substantial basis for the referee to conclude that not only was the rainfall a foreseeable event, but that the contractor's own actions combined with the contractor's conduct caused the damage to the project. As such, the referee's conclusion and the trial court's judgment is supported by competent, credible evidence, and may not be properly set aside by this court. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

Despite the foregoing, plaintiff contends that the pipe rising into the air to the extent demonstrated by the record was not foreseeable, and that, since the pipe's rising was the cause of the damage, the cause of the damage was not foreseeable under Section 107.16. We disagree. Plaintiff seeks to focus our attention not on the cause of the damage to the project (the rainfall and plaintiff's own actions), but on the result (the damage caused by the pipe rising into the air). Pursuant to Section 107.16, the contractor is released from liability only if the cause is unforeseeable, not if the damage resulting therefrom is unforeseeable. Accordingly, we reject plaintiff's contentions to the contrary.

Plaintiff also suggests that, while the referee may have considered the "unforeseeable cause" clause of Section 107.16 in his preliminary remarks, he failed to include any such statement in his actual findings of fact and conclusions of law. Accordingly, plaintiff contends that the referee failed to consider all of the elements of Section 107.16 in rendering a decision. Again, we disagree. Plaintiff's overly stringent reading of the referee's report does a disservice to the report and requires that we ignore a significant portion of the referee's report. We reject plaintiff's invitation to do so and consider the referee's report as a whole.

Given the foregoing, we find the decision of the trial court supported by substantial evidence and overrule plaintiff's first three assignments of error as set forth in its first proposition of law.

Given our disposition of plaintiff's first three assignments of error, its fourth assignment of error is moot and is overruled.

Finally, in its final assignment of error and third proposition of law, plaintiff contends that the trial court erred in failing to fully consider the objections plaintiff filed regarding the referee's report. Contrary to plaintiff's contentions, the trial court had in excess of two weeks to consider the objections filed to the referee's report before rendering a decision. Nothing in the record before us indicates that the trial court failed to consider the plaintiff's objections, and the court's silence regarding those objections does not in itself constitute such evidence. Further, the objections to the report have been addressed and rejected herein. Hence, to the extent the trial court may not have considered plaintiff's objections, plaintiff has not been prejudiced thereby. Accordingly, we find plaintiff's contentions in its fifth assignment of error not well-taken and overrule same.

Having overruled all of plaintiff's assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

STRAUSBAUGH and McCORMAC, JJ., concur.